Estate of Alexander K. Sessoms, The Liberty National Bank & Trust Company of Savannah and Frank S. Sessoms, Executors v. Commissioner.
Estate of Alexander K. Sessoms, Liberty Nat'l Bank & Trust Co. v. Commissioner
Docket No. 19902.
United States Tax Court
1949 Tax Ct. Memo LEXIS 15; 8 T.C.M. (CCH) 1056; T.C.M. (RIA) 49286; December 12, 1949
Q. L. Garrett, Esq., Waycross, Ga., and A. L. Lawton, Jr., Esq., for the petitioner. F. L. Van Haaften, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $127,727.58 in estate tax liability. The principal issue is whether certain property transferred in trust by decedent during his lifetime is includible in the gross estate under sections 811 (c) and (d) of the Internal Revenue Code. Other issues concern the amount of property held in trust and deduction of additional legal and administration fees. Findings of Fact Alexander K. Sessoms, the decedent, died April 12, 1944, and was survived by his wife, two sons, three daughters, one daughter by a former marriage, and *16 one grandchild. The decedent died from a heart ailment first evident in 1940. The trust in question was created by decedent on August 18, 1937, when the decedent was 54 years of age, active, vigorous, and in good health. The corpus of the trust consisted of timber land and stock of the Timber Products Co. The estate tax return here involved was filed with the collector of internal revenue in Atlanta, Georgia. Decedent was motivated in creating the trust in question by his desire to effectuate his theories of large scale, long-term, scientific cultivation and operation of timber lands on a permanent basis, including their development and use for pulp and timber, without permanently exhausting the property. He had invested large sums, including money belonging to his wife, in such operations, which were conducted on some 57,000 acres of land by Timber Products Company, of which decedent was president and owner of the controlling interest. He was also motivated by the fact that his father had left a large estate which had been divided among his many children and dissipated and decedent wanted to avoid having this happen to his lumber property. Decedent also desired to remove this project *17 from the risk of speculative business operations which he had. And he wanted to induce his two sons who were in the Georgia School of Technology to return to the country and be trained in his theories of timber management. Decedent was not primarily interested in the estate tax consequence of the transfer, although such information was volunteered by his advisers before the execution of the trust on August 18, 1937. As early as 1930 decedent had contemplated placing the controlling interest in Timber Products Company in trust, and in 1935 decedent consulted with his attorneys in order to reduce his ideas in this regard to legal form. Sometime during the next two years, the trust instrument, containing twenty-five pages and thirty-nine provisions, was prepared. It set forth decedent's theories of long-term forestry operations and the trustees were charged with operating the property in accord with decedent's program. The instrument provided for a single trust with the income divided into equal parts for the benefit of the decedent's children, of whom there were then six, with substitute provisions in the case of their respective deaths. The trust was to exist until twenty-one years *18 after the death of the survivor of the named children. It also provided: * * *
"36. Donor contemplates adding to these trusts by making conveyances of property to the Trustees, annually over the period of five years next ensuing after the year 1937, to be held by them to the uses, trusts and disposition as herein provided and as may be provided in a subsequent supplemental instrument in which additional property is conveyed. * * *
"If all of said six named children and if all children of Donor born after the date of this instrument shall die without leaving any children or descendants of children, them surviving, as aforesaid, then the Trustees shall convey the trust property in fee simple to the heirs at law and next of kin of Donor, according to the laws of descent and distribution of the State of Georgia then in force." The decedent nominated a bank as one trustee and his wife as the other trustee. Successor trustees were to be decedent's sons, or a person appointed by the Judge of the Superior Court of Clinch County, Georgia. In the trust instrument he provided for compensation for the trustees, as follows: "30. The corporate trustee shall receive as compensation *19 for its services one-half of the commissions now allowed by the laws of the State of Georgia to a guardian for receiving and paying out the estate of his ward. During the lifetime of Edna S. Sessoms and while she is acting as one of the Trustees under this trust indenture, she shall receive such compensation for her services as she, in her sole and uncontrolled discretion, shall determine is fair and reasonable, provided such compensation shall not exceed one-half of the net income from the trust property. Said Edna S. Sessoms shall be the exclusive judge as to what compensation is 'fair and reasonable' within the limits hereinabove described and her decision with respect thereto shall not be questioned by any beneficiary hereunder and shall not be subject to review by any court. Donor imposes explicit trust and confidence in his wife, Edna S. Sessoms and, in making this provision for her compensation as a trustee, he does so in the knowledge that she will, at all times, deal liberally with the beneficiaries under this trust indenture. Any compensation drawn by Edna S. Sessoms in excess of the compensation of the corporate trustee is intended by Donor as a gift to his wife." The *20 instrument also provided: "The Trustees, or either of them, may act as guardians for any minor beneficiaries. Donor expressly authorizes his wife, Edna S. Sessoms, to use in her discretion all or any part of the income to which Edna Sessoms and Ruth Sessoms, minors, may be entitled during their minority for their maintenance, support and education and to accumulate for them any amount or amounts not so used for their benefit. The Trustees shall be relieved of all liability upon payment to her of any funds for Edna Sessoms and Ruth Sessoms, minors. "Should Edna S. Sessoms, at any time, deem it advisable to withhold for the time being the distribution of all or any part of net income to any one or more of her children or their descendants, Donor expressly urges them to respect her wishes. "All income so withheld should be accumulated in the trust from which it is withheld and subsequently disbursed to the life tenant or life tenants entitled thereto. "After the death of Edna S. Sessoms, it is the desire of Donor that the corporate trustee shall exercise reasonable restraint upon life tenants by withholding payments of income to any one or more of them in the same manner and to *21 the same extent that Edna S. Sessoms is authorized, during her lifetime, to do with respect to her children and their descendants." The assets transferred in trust were 2,228 shares of Timber Products Company stock, out of a total of 4,060 shares, (which were subject to debts of $22,647), and 874 acres of land (which were subject to debts of $3,350). This recitation of the number of acres proved to be overstated when an actual survey of the property was made. The net value of the property transferred in trust was $73,393 in 1937. The decedent's net worth after the transfer in trust was $103,968.24. The net income of Timber Products Company for the years 1933 through 1942 was as follows: 1933
Gain
$ 118.65
1934
Gain
23.01
1935
Loss
1,211.74
1936
Loss
396.76
1937
Loss
16.38
1938
Gain
51.70
1939
Gain
36.49
1940
Loss
128.23
1941
Loss
111.72
1942
Gain
1,351.04
The decedent paid no income tax from 1930 until his death, with the exception of $52.99 in 1933, $262.21 in 1942, and $1,206.98 in 1943. He paid gift taxes on the property transferred in trust. After the transfer in trust, the decedent continued to be president of Timber Products *22 Company. The decedent's two sons were in charge of practical operations of Timber Products Company as well as Sessoms Land and Security Corporation, although the decedent was the administrative head. In 1941, the minority stockholders of Timber Products Company became dissatisfied because of its failure to pay dividends. The decedent, the corporate trustee, and these stockholders, settled the dispute by transferring about 25,000 acres of the land of the company in retirement of most of the minority stockholdings. The decedent became afflicted with a heart ailment in 1940 or 1941. He executed his will on March 17, 1943. Among other things, the decedent therein provided: "I have made no provision nor bequeathed any part of my estate unto my beloved wife, Edna Sirmans Sessoms, for the reason that she has ample means of her own to take care of and support her after my death, and because of the execution by me of a trust indenture, the terms of which she understands." The transfer in trust was not made in contemplation of death. On May 14, 1948, the executors and attorneys entered into an agreement as to the payment of legal fees of $25,000 for services in connection with these *23 proceedings. Pursuant to this agreement, not specifically approved by the Probate Court, $10,000 has been paid. The fees are reasonable in the agreed amount. Further expenditures amount to $68.33. Opinion KERN, Judge: The primary issues are whether a certain transfer by trust made by the decedent on August 18, 1937, was made in such form and manner as to require the inclusion in the gross estate of the value of the transferred property under the provisions of sections 811 (c) or (d) of the Internal Revenue Code. Respondent first requests inclusion of the trust corpus in the estate of decedent on the grounds that the transfer was made in contemplation of death in that it was intended as a substitute for a testamentary disposition of the property, and was made with the purpose of avoiding estate taxes. The determination of whether a gift was made in contemplation of death is resolved by the determination of fact of what was the impelling or motivating force in the mind of the decedent, resulting in the transfer in question. Allen v. Trust Company of Georgia, 326 U.S. 630. We have found that the transfer in question was not made in contemplation of death. The evidence *24 adduced indicates that the decedent would have created the trust in question in any event, because of the inherent nature of the subject matter and the program upon which he was embarked. Inevitably, under the circumstances, the decedent considered his own life span and the maturity of his program after his own death. But the general knowledge of all men that they must die does not of itself determine whether an inter vivos gift was made in contemplation of death, and we have concluded from the record that decedent's dominant motives were not associated with death. Besides his strong desire to work out his lumber planning ideas, there are other factors indicating that the gift was not in contemplation of death. It was at the time of the gift that decedent first reached a financial condition which would permit the gift and, by the execution of the trust, he was able to indirectly repay such financial aid as he had had from his wife, and to secure the property for his family from possible loss from his business activities as an entrepreneur and speculator. Factors favoring the respondent's contentions are minimized in that the descendant's will, which mentions the trust, was executed *25 in 1942 after the decedent had been apprised of a heart ailment; and the trust and will are not so related as to cause the trust to be regarded as part of decedent's testamentary provisions. The effect of inheritance taxes was volunteered approximately two months before the execution of the trust and after all the major provisions of the trusts had been settled, and we do not deem it to be the motivating cause of the transfer. The evidence as a whole supports our conclusion that the decedent was impelled by motives associated with life when he executed the trust in question. The gift was not made in contemplation of death. The other grounds given in support of the determination of the Commissioner are also without merit. Section 36 of the trust instrument allows the decedent to add to the trust for five years succeeding the execution of the trust upon terms to be decided. It does not give the decedent the power to alter or amend the trust with regard to the property already transferred. Moreover, the powers granted to the trustor under this provision expressly expired within five years, and prior to the death of the decedent. The powers did not exist as to any of the property here *26 involved. Respondent now concedes that the trust is not includible as a transfer intended to take effect at or after death. Although the trust in question is irrevocable by its unambiguous terms and gives the decedent no power to alter or amend the trust or any interest in the income or corpus, respondent argues that the income should have been taxed to the decedent in that (1) the decedent retained control of the trust within the meaning of Helvering v. Clifford, 309 U.S. 331, and (2) that the income was used in part to discharge the legal obligations of the decedent, and, therefore, the entire trust should be includible in the gross estate, citing Helvering v. Mercantile Commerce Bank & Trust Company, 111 Fed. (2d)224. We have already shown that the purpose of the trust was not to discharge the decedent's obligation to support and maintain the decedent's wife and the two children who were minors at the date of execution of the trust. The mere possibility that portions of the income ultimately might be so used by the wife for herself or as guardian for the children, under certain contingencies, has been held not to justify the inclusion of such a trust *27 in a decedent's estate. Estate of Clayton William Sherman, 9 T.C. 594. Decedent had no right to require that any of this trust income be used to support his family, and we regard the issue as controlled by the last-cited case, and indistinguishable in principle. See also Estate of Emanuel Sturman, 11 T.C. 890. Nor, as respondent contends, can we hold this trust includible in decedent's estate as falling within the doctrine of the Cliffard case. See Helvering v. Safe Deposit & Trust Company of Baltimore, 316 U.S. 56 [42-1 USTC [*] 10,167], wherein the doctrine of "substantial ownership" was rejected in the estate tax field. It is now settled that expenses of administration, including executors' commissions, are deductible in computing the net estate for the purposes of Federal estate tax before they have been paid or allowed by the Court having jurisdiction of the estate, provided such expenses are a reasonable estimate of the amount allowable under local law. See Estate of Alice K. Larkin, 13 T.C. 173. We have concluded that the attorneys' fees contracted for are reasonable. They, and the actual expenditures of $68.33, are, *28 therefore, deductible. See Rule 51, Rules of Practice of The Tax Court of the United States. Decision will be entered under Rule 50.